Filed By The Court
2/25/2026 3:57 PM
U.S. BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS
JACQUELINE E ARD AND TERRY F NICOLA

## DEFENDANTS
KEVIN CAMPBELL, CHAPTER 7 TRUSTEE, ET AL

**(b)**  County of Residence of First Listed Plaintiff    **BEAUFORT**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    UNKNOWN
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)
PRO SE

Attorneys (If Known)
MICHAEL H CONRADY

## II.  BASIS OF JURISDICTION    (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff

☒ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT    (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 610 Agriculture | ☒ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product    Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability    ☐ 365 Personal Injury - | of Property 21 USC 881 |  | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &    Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander    ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability    Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine    **PERSONAL PROPERTY** | Safety/Health |  | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product    ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability    ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability    ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal    Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting    ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment    Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/    **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations    ☐ 530 General |  | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare    ☐ 535 Death Penalty |  |  | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 540 Mandamus & Other |  |  | Under Equal Access |
|  | Employment    ☐ 550 Civil Rights |  |  | to Justice |
|  | ☐ 446 Amer. w/Disabilities -    ☐ 555 Prison Condition |  |  | ☐ 950 Constitutionality of |
|  | Other |  |  | State Statutes |
|  | ☐ 440 Other Civil Rights |  |  |  |

## V.  ORIGIN    (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☒ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI.  CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Fed. R. Bankr. P. 8007(b); 28 U.S.C. §§ 1651, 158; 11 U.S.C. §§ 105(a), 363)

Brief description of cause:
EMERGENCY MOTION FOR STAY PENDING APPEAL CASE 9:25-cv-04500-BHH-MHC

## VII.  REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☐ No

## VIII.  RELATED CASE(S) IF ANY
(See instructions):    JUDGE   HON. BRUCE HOWE HENDRICKS    DOCKET NUMBER   9:25-cv-04500-BHH-MHC

DATE   2-25-26

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

|  |  |  |
|---|---|---|
| **IN RE:** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | ADV PROC: 9:25-cv-04500-BHH-MHC BK CASE NO.:25-01384-JD CHAPTER 7 |
| **Jacqueline Ard and Terry F. Nicola,** | | **NOTICE OF FILING EMERGENCY MOTION FOR STAY PENDING APPEAL AND INJUNCTION RELIEF IN THE US DISTRICT COURT** |
| **Debtor(s)** | | |

## NOTICE OF FILING EMERGENCY MOTION FOR STAY PENDING APPEAL AND INJUNCTIVE RELIEF IN THE UNITED STATES DISTRICT COURT

PLEASE TAKE NOTICE that Debtors **Jacqueline Elizabeth Ard** and **Terry Frank Nicola** ("Debtors"), appearing **pro se**, hereby notify the Court and all parties in interest that Debtors have filed an **Emergency Motion for Stay Pending Appeal and Injunctive Relief** in the **United States District Court for the District of South Carolina**.

1. The Emergency Motion seeks a stay pending appeal and injunctive relief pursuant to Fed. R. Bankr. P. 8007(b).

2. The purpose of the Emergency Motion is to preserve appellate jurisdiction and maintain the status quo pending resolution of Debtors' appeals, including preventing actions— such as § 363 sales, foreclosures, or repossessions—that would render the appeals statutorily or practically moot.

3. Debtors previously sought stay relief in the Bankruptcy Court, which was denied, necessitating application to the District Court under Rule 8007(b).

4. A true and correct copy of the Emergency Motion for Stay Pending Appeal and Injunctive Relief filed in the United States District Court is attached hereto as Exhibit A.

1

This Notice is submitted to ensure full disclosure to the Court and all parties and to preserve the record for informational purposes only. It is not intended to address the merits of the Emergency Motion or the pending appeals.

**Respectfully submitted,**

_____ 2-25-26
**Jacqueline E. Ard, Debtor** *Pro Se*
Mailing Address:
21215 Dartmouth Dr
Southfield, MI 48076
(313) 770-7051

_____
**Terry F. Nicola, Co-Debtor** *Pro Se*
Mailing Address:
21215 Dartmouth Dr
Southfield, MI 48076
email: jacquelineard72@gmail.com

2

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| **JACQUELINE ELIZABETH ARD** and **TERRY FRANK NICOLA**, Appellants, <br><br> v. <br><br> **KEVIN CAMPBELL, Chapter 7 Trustee**, et al., Appellees. | ADV PROC: 9:25-cv-04500-BHH-MHC <br> BK CASE NO.:25-01384-JD <br> CHAPTER 7 <br><br> **EMERGENCY MOTION FOR STAY PENDING APPEAL, INJUNCTIVE RELIEF, AND ORDER COMPELLING ADVANCEMENT OF APPEAL** *(Fed. R. Bankr. P. 8007(b); 28 U.S.C. §§ 1651, 158; 11 U.S.C. §§ 105(a), 363)* |

**EMERGENCY MOTION FOR STAY PENDING APPEAL, INJUNCTIVE
RELIEF, AND ORDER COMPELLING ADVANCEMENT OF APPEAL**
*(Fed. R. Bankr. P. 8007(b); 28 U.S.C. §§ 1651, 158; 11 U.S.C. §§ 105(a), 363)*

Debtors–Appellants Jacqueline Elizabeth Ard and Terry Frank Nicola ("Appellants"), proceeding pro se, respectfully move this Court for an emergency stay pending appeal and related injunctive relief preserving the status quo.

Appellants submit that immediate intervention is necessary to prevent irreversible medical, property, and appellate harm before the pending appeals can be meaningfully heard.

**PRELIMINARY STATEMENT**

This case has reached a critical inflection point.

The Bankruptcy Court has authorized an accelerated liquidation path that requires Appellants—two permanently disabled debtors—to vacate their homes within days while permitting turnover and disposal of personal property and distribution of proceeds to disputed creditors. At the same time, Appellants' appeals remain pending and incomplete due in part to transcript delays outside their control.

The practical effect is stark: absent intervention, estate assets may be irreversibly sold and Appellants displaced before the District Court can review the serious legal questions presented.

1

Rule 8007 is designed to prevent situations in which appellate review would be rendered meaningless by the absence of a stay, as recognized in *Nken v. Holder,* 556 U.S. 418, 427 (2009), where the Court explained that a stay serves to preserve effective appellate review.

Appellants therefore respectfully request emergency relief.

## RELIEF REQUESTED

Appellants request an order:

**A.** Staying and enjoining all actions to market, auction, sell, transfer, close, or otherwise dispose of estate property pending appeal;

**B.** Immediately preserving the status quo through an administrative stay;

**C.** Compelling advancement of the appeal, including transcript production and expedited briefing;

**D.** Waiving, reducing, or allowing alternative security in lieu of a full supersedeas bond; and

**E.** Granting such further relief as is just and proper.

## JURISDICTION AND AUTHORITY

This Court has jurisdiction under 28 U.S.C. § 158(a). Relief is properly sought under Fed. R. Bankr. P. 8007(b), as the Bankruptcy Court denied Appellants' Emergency Motion to Impose the Automatic Stay, denied a stay pending appeal, denied reasonable accommodations and recusal, and ordered conversion to Chapter 7—all while related appeals arising from the same course of conduct remain pending. These unresolved appeals, if not stayed, risk statutory mootness under 11 U.S.C. § 363(m) and irreparable harm.

This Court also holds authority under 28 U.S.C. § 1651 (All Writs Act) to issue orders necessary to protect its jurisdiction, and 11 U.S.C. § 105(a) to prevent abuse of process or actions that would undermine appellate review.

The stay standard requires consideration of: (1) likelihood of success on the merits or serious legal questions going to the merits; (2) irreparable harm absent a stay; (3) balance of the equities; and (4) public interest. See *Nken v. Holder,* 556 U.S. 418, 425, 434 (2009).

# I. NATURE OF THE EMERGENCY

This emergency did not arise overnight. It developed through a sequence of rulings that, in combination, have stripped Appellants of the ordinary protections that typically preserve the status quo during appellate review.

The Sale Order now requires immediate turnover and threatens eviction and disposal of personal property. At the same time, the Trustee seeks to invoke § 363(m) protections that could moot the appeals once a sale closes.

Courts have repeatedly held that the risk of statutory mootness under 11 U.S.C. § 363(m) constitutes a form of irreparable harm warranting a stay pending appeal. See *In re Stadium Mgmt. Corp.,* 895 F.2d 845, 847 (1st Cir. 1990); *In re Rare Earth Minerals,* 445 F.3d 359, 363 (4th Cir. 2006) (noting the powerful mootness effect of § 363(m)). Without immediate relief, the appeals risk becoming illusory.

# II. CHRONOLOGY OF DILIGENCE, APPELLATE STAGNATION, AND PROCEDURAL OBSTRUCTION

Appellants submit the following chronology to demonstrate their diligence and to show that appellate stagnation results from missing transcripts and administrative inaction—not from Appellants:

- **April 18, 2025:** Appellants filed Motion to Impose Automatic Stay under 11 U.S.C. § 362(c)(4)(B).
- **April 25, 2025:** Appellants filed sworn affidavit in support.
- **May 20, 2025:** Appellants filed Response to all objections.
- **May 21, 2025:** Bankruptcy Court denied Motion to Impose.
- **May 22, 2025:** Appellants timely filed Notice of Appeal and Statement of Election to district court.
- **May 31, 2025:** Appellants paid $298 appellate filing fee.
- **June 10, 2025:** While appellate relief was pending, West-Aircomm repossessed Appellants' vehicle en route to medically necessary treatment.

3

- **June 12, 2025:** Judge Davis granted West-Aircomm's Relief from Stay Motion (post repossession).

- **June 17, 2025:** Appellants filed Amended Notice of Appeal to cure alleged deficiencies.

- **June 18, 2025:** Appellants filed Motion for ADA Accommodations with medical documentation.

- **June 23, 2025:** Judge Davis denied ADA Motion.

- **July 18, 2025:** Appellants filed Motion for Extension of Time re: appellate documents (docketed inconsistently, but Appellants possess email confirmation of receipt).

- **September 10, 2025:** Appellants filed transcript request for Motion to Impose hearing. Request processed, but despite repeated follow up emails, no transcript has been produced and no explanation provided.

- **September 15, 2025:** Appellants filed (i) Emergency Motion for Stay Pending Appeal (with affidavits/medical evidence) and (ii) Designation of Record and Statement of Issues.

- **September 24, 2025:** Judge Davis denied Stay Pending Appeal Motion.

To date: No transcripts have been produced, no briefing schedule issued, and appeals remain stagnant despite Appellants' completed filings. Meanwhile, the Trustee now seeks § 363 liquidation sales, which would trigger statutory mootness under § 363(m) and effectively nullify appellate jurisdiction.

## III. NO STAY EXISTS ONLY BECAUSE IT WAS WRONGFULLY DENIED

Each request for stay protection was denied despite Appellants' sworn evidence of disability, medical necessity, and irreparable harm. Equity does not permit the Trustee or creditors to exploit the Bankruptcy Court's wrongful denial of stay protection—and an appellate process stalled through no fault of Appellants—to liquidate estate assets and extinguish appellate rights.

Appellants complied fully with Bankruptcy Code requirements by:

- Seeking imposition of the automatic stay under 11 U.S.C. § 362(c)(4)(B);
- Seeking a stay pending appeal under Fed. R. Bankr. P. 8007; and
- Seeking emergency relief as enforcement actions escalated.

**4**

Appellants timely appealed:

- Denial of the automatic stay;
- Denial of recusal of Judge Davis; and
- Forced conversion to Chapter 7.

Appellants thereafter fulfilled every appellate obligation, including:

- Filing designations of record and statements of issues;
- Requesting hearing transcripts necessary for record completion; and
- Filing emergency motions to preserve appellate rights.

Each appeal bears a docket number and case number, yet none has progressed. Appellants have received:

- No acknowledgment from the District Court;
- No briefing schedule; and
- No deficiency notices or instructions.

The absence of a stay results not from delay, neglect, or bad faith, but solely from adverse rulings now on appeal. Equity forbids Appellees from exploiting this procedural gap—created by denial of stay protection and appellate stagnation—to irreversibly seize and liquidate estate property.

Courts evaluating stay requests apply the traditional four-factor standard and exercise equitable judgment based on the circumstances of the particular case. See *Nken v. Holder,* 556 U.S. 418, 433–34 (2009)."Equity does not permit parties to exploit the absence of a stay—where that absence itself is under appellate challenge—to rush liquidation and extinguish appellate rights.

## IV. MOTION TO IMPOSE AUTOMATIC STAY SHOULD BE GRANTED BASED ON CLEAR EVIDENCE OF GOOD FAITH

Under 11 U.S.C. § 362(c)(4)(B), the court shall grant a motion to impose the automatic stay if the debtor demonstrates by clear and convincing evidence both (1) good faith in the current filing and (2) changed circumstances since prior dismissals. The record here satisfies both prongs.

**Clear evidence of good faith** includes:

- Timely filing of all schedules and plan documents in this Chapter 13 case;
- Full and timely payment of every Chapter 13 plan installment prior to forced conversion;

- Demonstrated stable income ($7,000/month retirement + $6,000–$8,000/month rentals);

- Compliance with court orders, including traveling 843 miles to appear despite disability; and

- Prior dismissals caused by documented illness, disability, and procedural barriers—not abuse of process.

See, e.g., *In re Kestell,* 99 F.3d 146, 149 (4th Cir. 1996) (debtor compliance with plan payments/court orders evidences good faith); *In re Thomas,* 679 F.3d 162, 173–74 (4th Cir. 2012) (good faith shown through diligent efforts despite challenges); *In re Lee,* 438 B.R. 910, 917 (Bankr. D.S.C. 2010) (clear and convincing evidence standard met where debtor showed stable income, timely payments, and medical barriers to prior compliance).

Changed circumstances are equally clear: Appellants' medical crises have stabilized sufficiently to enable sustained Chapter 13 compliance, distinguishing this case from prior dismissals. See *In re McElhinney,* 463 B.R. 357, 366 (Bankr. W.D.N.C. 2011) (changed circumstances shown by medical improvement enabling reorganization).

This compelling record mandates imposition of the automatic stay under § 362(c)(4)(B).

## V. PRE-HEARING INSTABILITY AND FORCED DISPLACEMENT

In the months leading up to the May 22, 2025, hearing, Appellants' living conditions in South Carolina deteriorated dramatically. They endured disconnection of electrical service during the bankruptcy, towing of their vehicle, deactivation of parking passes, and repeated interference with access to their residence.

These events created a hostile and medically unstable environment for Mr. Nicola, who suffers from advanced Stage IV Parkinson's disease and requires reliable electric power and a stable living environment to mitigate his symptoms.

On April 8, 2025, following the unlawful disconnection of power, Ms. Ard suffered a catastrophic injury to her dominant hand, necessitating reconstructive surgery to reattach a severed finger and repair two tendons and an artery, resulting in permanent paralysis. Confronted

with simultaneous medical crisis and housing instability, Appellants temporarily relocated to Michigan to recover and regain stability. Despite this 843-mile displacement, they remained committed to appearing in person at the May 22 hearing.

## VI. THE DAY OF THE HEARING — DETAILED TIMELINE

The events of May 22 demonstrate diligence, not neglect. Despite documented medical limitations and travel complications, Appellants traveled over 18 hours (843 miles) from Michigan to South Carolina to attend in person.

Due to inclement weather and disability complications during the drive, they experience a delay in their arrival. At 9:03 a.m., they contacted the court deputy of their anticipated 11:37 a.m. arrival for the 11:00 a.m. hearing; the deputy confirmed the matter would be held. At approximately 11:15 a.m., the deputy contacted Appellants again, who reaffirmed their imminent arrival.

Appellants reached the courthouse at 11:37 a.m., ready to proceed. All creditors and counsel were present. Judge Davis returned to the bench. Rather than conducting the hearing, however, Judge Davis announced he was recalling the matter solely to read the order. He then denied the Motion with prejudice for failure to appear and prosecute—without hearing argument or ruling on the merits. Judge Davis further announced a future hearing on conversion to Chapter 7 or dismissal with a three-year bar to refiling, then adjourned.

Despite, the advanced notice of a brief 37-minute delay, the presence of all parties in the courtroom, and the Appellants' appearance ready to proceed, The Court exercised its discretion to deny the motion **with prejudice**—before Appellants' pre-confirmed arrival time—thereby depriving them of their fundamental right to prosecute the motion and be heard on the merits.

## VII. PATTERN OF DISPROPORTIONATE SANCTIONS

The Fourth Circuit has cautioned that dismissal-type outcomes require careful, proportionate use of sanctions and consideration of specific factors, including the party's personal responsibility, prejudice to the opposing side, any history of delay, and the availability of less drastic

alternatives. See *Hillig v. Comm'r,* 916 F.2d 171, 174 (4th Cir. 1990); *In re Walters,* 868 F.2d 665, 669 (4th Cir. 1989).

Applied here, a series of rigid procedural rulings has effectively stripped stay protections, accelerated liquidation, curtailed meaningful opportunities to cure, and threatened future filing rights. For medically vulnerable pro se debtors, this cumulative effect imposes extraordinary hardship—precisely the kind of inequitable outcome that the stay mechanism in Rule 8007 is intended to avert.

## VIII. § 363 SALES WILL MOOT THE APPEAL; § 363(m) PROTECTION IS NOT ABSOLUTE

Absent a stay, consummated § 363 sales to good-faith purchasers will render these appeals statutorily moot under 11 U.S.C. § 363(m), stripping this Court of jurisdiction. See *In re Rare Earth Minerals, LLC,* 445 F.3d 359, 363 (4th Cir. 2006).

Moreover, § 363(m) does not categorically immunize sales conducted amidst allegations of fraud, collusion, or bad faith. See, *e.g., In re Edwards,* 962 F.2d 641, 643-44 (7th Cir. 1992) (collecting cases); see also *3 Collier on Bankruptcy ¶ 363.11 (Richard Levin & Henry J. Sommer eds., 16th ed.).*

Appellants have raised—and actively pursue—claims that certain creditors engaged in fraudulent conduct against the estate. Permitting sales to close before appellate review would reward such alleged misconduct and permanently foreclose accountability.

## IX. DISPUTED HOA CLAIMS AND SALE PROCEEDS RISK

The Sale Order anticipates distributions to homeowners' associations whose asserted liens, in Appellants' good-faith knowledge, consist of punitive fines, attorneys' fees, and late charges not unpaid regular assessments. Those lien components are currently being actively litigated in state court. Proceeding with liquidation and distribution before that adjudication, risks misallocating estate value and causing irreparable prejudice to Appellants.

## X. IRREPARABLE HARM (MEDICAL, HOUSING, AND CONSTITUTIONAL)

Appellants face compounded, irreversible harm. Mr. Nicola (68) suffers advanced Stage IV Parkinson's requiring stable power, transportation, and housing; Ms. Ard endures permanent dominant-hand paralysis post-reconstructive surgery. Vehicles essential for medical transport have already been seized; rental properties generating $6,000–$8,000/month income face imminent § 363 liquidation.

Fourth Circuit precedent confirms this constitutes irreparable harm:

- *Loss of housing/medical stability*: *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 425 (4th Cir. 2007) (irreparable harm where eviction threatens "basic human need for shelter").
- *Threat to life/health*: *Winter v. NRDC*, 555 U.S. 7, 20 (2008) (physical harm incapable of monetary remedy); *see also Roe v. Dep't of Defense*, 947 F.3d 207, 231 (4th Cir. 2020) (medical destabilization warrants stay).
- *Constitutional deprivation*: *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 817 (4th Cir. 1991) (due process violations constitute irreparable harm); *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (adopted in 4th Cir.) (right to be heard triggers presumption of irreparable injury).

Displacement would exacerbate Parkinson's symptoms (falls, psychosis, cognitive decline already documented) and destroy income stability. No monetary remedy exists for medical catastrophe or extinguished appellate rights.

## XI. IRREPARABLE HARM IS OVERWHELMING

Under Nken, the irreparable-harm inquiry is a critical component of the stay analysis, and courts give particular weight to the first two factors—likelihood of success and irreparable injury. See *Nken v. Holder,* 556 U.S. 418, 434 (2009). Appellants face concrete and escalating medical harm: Mr. Nicola's Parkinson's disease has measurably worsened under litigation-related stress, including frequent falls, battery-related functional interruptions, night terrors, cognitive decline, and episodes of psychosis. Forced displacement from the residence would further destabilize his condition.

**9**

Courts have also recognized that the loss of real property pending appeal can constitute irreparable harm supporting a stay. See, *e.g., In re Frank,* 2010 WL 1416692, at \*3 (Bankr. E.D. Va. Apr. 6, 2010). In addition, once a sale closes to a good-faith purchaser under 11 U.S.C. § 363, appellate relief is often foreclosed by the statutory mootness rule. See *In re Rare Earth Minerals,* 445 F.3d 359, 363 (4th Cir. 2006) (describing the "powerful mootness effect" of § 363(m)). The combined risk of serious medical destabilization, loss of the home, and statutory mootness presents the paradigmatic case for finding irreparable harm.

## XII. ABSENCE OF STAY AND LITIGATION FRACTURE ACROSS JURISDICTIONS

**The absence of a stay—resulting solely from its wrongful denial—has fractured proceedings across multiple courts and jurisdictions.** As a direct result, these disabled, pro se Appellants, who no longer possess their vehicles, are compelled to defend more than six active cases simultaneously in the Bankruptcy Court, the United States District Court, the Beaufort County Court of Common Pleas, and the South Carolina Court of Appeals.

This is not a product of litigation strategy or delay, but of necessity. Without a stay, creditors have been effectively granted an open gate to pursue estate property through parallel proceedings, without centralized oversight, while appellate review remains pending. The resulting litigation burden is overwhelming, physically dangerous to these disabled Appellants, and irreparable in effect.

Permitting a § 363 sale under these circumstances would do more than moot the pending appeals—it would affirmatively reward creditors alleged to have engaged in fraudulent conduct by allowing them to obtain estate property without accountability or review. Equity does not permit appellate rights to be extinguished through procedural acceleration, nor does the public interest favor rewarding alleged fraud through irreversible liquidation while appeals are pending.

## XIII. LIKELIHOOD OF SUCCESS OR SERIOUS QUESTIONS

Appellants are not required to demonstrate certain victory on the merits, only that their appeals present serious questions deserving appellate review. See *The Real Truth About Obama, Inc. v. FEC,* 575 F.3d 342 (4th Cir. 2009).

The notices of appeal raise substantial issues, including: the failure to adequately account for Appellants' disability and pro se status, the premature extension of § 363(m) protections, insufficient analysis of exemptions under 11 U.S.C. § 522(l), overbroad turnover authority, and the waiver of Rule 6004(h) without particularized findings. At a minimum, these matters present serious appellate questions.

## XIV. BALANCE OF EQUITIES

The balance of equities overwhelmingly favors Appellants. They face the loss of health, stable housing, and the practical ability to obtain appellate review, while Appellees face only a temporary delay in distribution or enforcement. See *Nken v. Holder,* 556 U.S. 418, 435 (2009) (emphasizing that courts must weigh the relative harms in deciding whether to grant a stay).

The public interest likewise supports interim relief. It favors preserving meaningful appellate review, protecting access to the courts for disabled litigants, preventing appeals from becoming moot through procedural acceleration, and maintaining confidence in the integrity and orderly administration of the bankruptcy system. See *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987) (recognizing the public interest in both error correction and the proper administration of justice).

## XV. PUBLIC INTEREST

The public interest favors preserving meaningful appellate review, safeguarding equal access to the courts for individuals with disabilities, maintaining orderly bankruptcy administration, and minimizing the risk of irreversible error—particularly where statutory mootness under 11 U.S.C. § 363(m) could otherwise bar effective review.

## XVI. BOND WAIVER OR ALTERNATIVE SECURITY

Courts have discretion to waive or reduce a supersedeas bond in appropriate circumstances under the stay-pending-appeal framework. See *Fed. R. Civ. P. 62; Fed. R. Bankr. P. 8007.* Here, waiver or substantial reduction is warranted.

First, a full bond is financially impossible: Appellants are disabled and have severely limited liquidity. Second, the estate faces no meaningful prejudice because the properties are insured and

being preserved. Third, alternative forms of protection are available; the Court may, for example, require escrow arrangements, preservation orders, or a partial bond tailored to the actual risk. In these circumstances, requiring a full bond would operate in practice as a denial of appellate review.

## XVII. REQUEST FOR EXPEDITED RELIEF

Because the Trustee's sale process is moving swiftly and the risk of § 363(m) mootness is imminent, Appellants respectfully request: (i) an immediate administrative stay, (ii) an expedited hearing, and (iii) date-certain advancement of the appeal.

## CONCLUSION

This case is no longer about ordinary bankruptcy administration. It is about whether two permanently disabled debtors will lose their homes, medical stability, and appellate rights before a reviewing court can examine the serious legal issues presented.

Rule 8007 exists to prevent precisely this outcome.

**WHEREFORE,** Appellants respectfully request entry of an order granting the requested emergency relief.

Date: ___2-25-26___

**Respectfully submitted,**

_____
**Jacqueline E. Ard, Appellant *Pro Se***
21215 Dartmouth Dr
Southfield, MI 48076
(313) 770-7051

_____
**Terry F. Nicola, Appellant *Pro Se***
21215 Dartmouth Dr
Southfield, MI 48076
jacquelineard72@gmail.com

12

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

|  |  |  |
|---|---|---|
| **JACQUELINE ELIZABETH <u>ARD</u>** and **TERRY FRANK NICOLA**, Appellants, | ) ) ) ) ) ) | ADV PROC: 9:25-cv-04500-BHH-MHC BK CASE NO.:25-01384-JD CHAPTER 7 |
| v. | ) ) ) | |
| **KEVIN CAMPBELL, Chapter 7 Trustee**, et al., Appellees. | ) ) ) ) ) ) | **Affidavit of** **Terry Frank Nicola** |

# AFFIDAVIT OF TERRY FRANK NICOLA

**(Immediate and Irreparable Harm)**

I, Terry Frank Nicola, declare under penalty of perjury as follows:

## 1. Introduction

I am a Debtor–Appellant in the above-captioned matter. I submit this affidavit in support of our Emergency Motion for Stay Pending Appeal and related injunctive relief.

I make this statement based on my personal knowledge and lived experience. I submit it with respect for this Court and with urgency because my medical stability and basic security are now at serious risk.

Unless relief is granted, I face immediate and irreparable harm that cannot be undone by later monetary remedies.

## 2. My Medical Condition

I am 68 years old and suffer from advanced Stage IV Parkinson's disease.

My condition is progressive and severely debilitating. It requires:

- continuous medical management
- stable housing
- reliable electrical service
- consistent medication routines
- and dependable transportation

1

My daily functioning depends heavily on maintaining a predictable and medically stable environment.

When that stability is disrupted, my symptoms worsen quickly and sometimes dangerously.

## 3. My Lifetime Savings and Retirement Planning

Before my disease advanced, I worked for approximately forty (40) years and carefully accumulated what I believed would be a sufficient disability retirement nest egg — approximately $1.7 million.

My intent in building those savings was simple and responsible:

- to provide for my medical needs as Parkinson's progressed;
- to maintain dignity and independence; and
- to ensure my wife and I would not become a burden on others.

Those funds were substantially invested into income-producing rental properties intended to support our long-term medical and living expenses.

Today, that retirement cushion has been largely exhausted, and the very assets we relied upon for survival are now being rapidly liquidated.

From my perspective, everything I spent decades building to survive this disease is being stripped away.

## 4. Impact of Creditor and Association Actions

Throughout the events leading to this bankruptcy case, I experienced what I sincerely believe to be aggressive and disproportionate treatment related to my disability.

Among other things, we experienced:

- interference with medically necessary accommodations in our home;
- barriers to bringing medical aids onto the property;
- restrictions affecting my mobility devices;
- towing of our vehicle under disputed circumstances;
- fines assessed in connection with my service animal; and
- restrictions affecting my ability to move safely within the premises.

These events were not merely inconvenient — they were emotionally and medically destabilizing for someone in my condition.

At one point, I was assessed approximately $400 in fines related to my service animal. I was also restricted from using my motorized mobility scooter on the premises.

2

For a person with advanced Parkinson's disease, mobility is not optional. It is essential to basic functioning and safety.

## 5. Medical and Psychological Decline

The cumulative stress, instability, and uncertainty surrounding these proceedings have taken a measurable toll on my health.

In recent months I have experienced:

- frequent falls and loss of balance;
- episodes of severe neurological stress;
- periods of psychosis;
- night terrors and severe sleep disruption;
- battery-related functional interruptions affecting my medical support needs;
- significant loss of appetite; and
- persistent fear and anxiety about housing instability.

My condition is highly sensitive to stress and environmental disruption. Sudden displacement or loss of stability could accelerate my decline in ways that may not be reversible.

## 6. Loss of Transportation and Access to Care

The repossession and loss of our vehicles during periods of medical crisis severely impacted my ability to attend necessary medical appointments and maintain treatment continuity.

For someone in my condition, missed care and instability in transportation are medically dangerous.

These disruptions compounded the physical and emotional strain already present in our household.

## 7. Present Risk if the Sale Proceeds

I understand that the current Sale Order requires rapid turnover and could result in our displacement within days.

If that occurs, I face a very real risk of:

- loss of medically necessary environmental stability;
- interruption of device charging and medical routines;
- increased fall risk;
- neurological destabilization; and
- possible hospitalization or worse.

At this stage of Parkinson's disease, sudden forced relocation is medically dangerous.

**3**

## 8. Good Faith and Intent

My wife and I did not enter bankruptcy to avoid responsibility.

We entered in good faith to reorganize and to pay legitimate creditors while preserving the assets necessary for my medical survival.

Before the forced conversion of our Chapter 13 case:

- we filed required schedules and documents;
- we proposed a feasible plan; and
- we made all required plan payments in full and on time.

We have tried to comply at every step despite significant medical hardship.

## 9. Human Impact

I respectfully share this with the Court from a personal place.

I worked my entire adult life to prepare for the reality of this disease. I tried to plan responsibly so that when my health declined, I would still have stability and dignity.

Today, I live with constant fear that the foundation we built for my medical survival will be taken away before our legal challenges are even heard.

The emotional toll of watching our savings depleted and our assets placed at risk — while my health continues to decline — has been profound.

I am not asking this Court to excuse lawful obligations. I am asking only for a brief preservation of the status quo so that the serious issues on appeal can be reviewed before irreversible harm occurs.

## 10. Conclusion

Without immediate relief, the harm to my health, stability, and safety will be severe and potentially irreversible.

I respectfully ask this Court to grant the requested stay so that our appeals may be heard on a complete record before further irreversible steps are taken.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

**Executed on:** _2 · 25 · 2 ··/2026_

4

I declare under penalty of perjury that everything I have stated in this document is true and correct.

PRINT FULL NAME: _TERRY F. NICOLA_

SIGNATURE: _Terry F. Nicola_

Sworn to and subscribed before me on (date) _2-25-26_.

Notary Public: _____          Notary Seal

[Notary's Printed Name] _Curt Jorrey_

Commission Expires: _10/26/31_

STATE OF _Michigan_                          )
                                             ) SS
COUNTY OF _Oakland_                          )

CURT JORREY
Notary Public - State of Michigan
County of Oakland
My Commission Expires Oct 26, 2031
Acting in the County of _____

5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| **JACQUELINE ELIZABETH ARD** and **TERRY FRANK NICOLA**, Appellants, <br><br> v. <br><br> **KEVIN CAMPBELL, Chapter 7 Trustee**, et al., Appellees. | ADV PROC: 9:25-cv-04500-BHH-MHC <br> BK CASE NO.:25-01384-JD <br> CHAPTER 7 <br><br><br> **Affidavit of Jacqueline E Ard** |

## AFFIDAVIT OF JACQUELINE ELIZABETH ARD
**Immediate and Irreparable Harm)**

I, Jacqueline Elizabeth Ard, declare under penalty of perjury as follows:

## 1. Introduction

I am a Debtor–Appellant in the above-captioned matter and submit this affidavit in support of our Emergency Motion for Stay Pending Appeal and related injunctive relief.

I make this statement based on my personal knowledge and lived experience throughout these proceedings. I submit it with deep respect for this Court and with urgency born of our present circumstances.

The relief we seek is necessary to prevent immediate and irreparable harm to my husband and me — including serious medical risk, loss of housing stability, and permanent loss of our property and livelihood before our appeals can be meaningfully heard.

## 2. My Role as Primary Caregiver

I am the primary and, in practical terms, the sole daily caregiver for my husband, Terry Frank Nicola. My husband suffers from advanced Stage IV Parkinson's disease, Bilateral, Charcot Foot, complications from major knee surgery, and other related complications. His condition requires:

- stable housing
- reliable electricity
- consistent medication routines
- dependable transportation

**1**

- and daily physical supervision

His symptoms are highly sensitive to stress and environmental instability. When his condition destabilizes, the consequences can be rapid and dangerous.

As his caregiver, I am responsible for managing his medications, monitoring his physical safety, assisting with mobility, and ensuring his medical devices remain charged and functioning.

## 3. Catastrophic Hand Injury — April 8, 2025

On April 8, 2025, I suffered a catastrophic injury to my dominant right hand—as a direct result of our creditors lawlessness—that required major reconstructive surgery.

During that surgery, physicians worked to repair:

- a severed finger
- two (2) severed tendons
- and a damaged artery

This was not a minor injury. It was a traumatic medical event that substantially impaired my dominant hand.

In the months that followed, I required intensive therapy and careful recovery conditions in order to regain functional use of my hand.

Despite those efforts, I now suffer:

- permanent paralysis in my dominant hand
- impaired circulation
- chronic pain
- and significant loss of dexterity

This injury has profoundly limited my ability to:

- write
- type
- prepare legal filings
- drive normally
- and perform ordinary daily tasks

## 4. Impact of Creditor Actions on My Medical Recovery

During the critical recovery window following my surgery, our household experienced escalating and destabilizing creditor and association actions.

Among other events:

2

- electrical service was disconnected during the pendency of bankruptcy protections;
- our vehicles were repossessed under disputed circumstances while we were in medical crisis;
- access to our properties became unstable; and
- we experienced repeated interference that made our living environment increasingly unsafe.

The repossession of our vehicles — particularly while I was recovering from reconstructive surgery — severely obstructed my ability to obtain the ongoing therapy and follow-up care necessary to restore function in my hand.

Transportation is not optional for someone in my condition. It was medically necessary. Because of these disruptions, my recovery period — which physicians indicated was critical — was materially compromised.

I live every day with the permanent consequences of that disruption.

## 5. Current Financial and Caregiving Strain

At present, our entire household income is consumed by three basic categories:

1. preserving and defending our assets in these proceedings;
2. maintaining bare-bones alternative housing; and
3. covering essential medical and survival expenses.

We are not living comfortably. We are surviving month to month.

There are periods when we struggle to:

- keep utilities current;
- maintain adequate food; and
- cover basic medical needs.

The emotional and physical toll of being a full-time caregiver — while disabled myself and under constant financial and legal pressure — is overwhelming.

## 6. Deterioration of My Husband's Condition

The stress and instability of these proceedings have measurably worsened my husband's condition.

He has experienced:

- increased falls
- worsening cognitive fog
- severe sleep disturbance

3

- night terrors
- and episodes of neurological distress

His physicians have repeatedly emphasized that stability — housing, power, routine — is medically critical for him.

The current trajectory of forced liquidation and displacement threatens exactly the conditions he needs to remain medically stable.

## 7. Imminent Risk if Relief Is Not Granted

Without intervention from this Court, we face the real and immediate possibility of:

- losing our homes;
- losing access to medically necessary accommodations;
- losing critical personal property; and
- suffering further medical destabilization.

Once these events occur, they cannot be meaningfully undone — even if we ultimately prevail on appeal.

**This is why the requested stay is so urgent.**

## 8. Good Faith and Intent

Throughout this case, we have tried — in good faith — to comply with every requirement placed before us.

We have:

- filed required schedules and documents;
- made Chapter 13 payments in full and on time prior to conversion;
- appeared when physically able;
- traveled long distances to attend hearings; and
- pursued appellate remedies diligently.

We are not attempting to evade lawful obligations. We are trying to preserve the minimal stability necessary to survive medically and financially while the legal issues in this case are properly reviewed.

## 9. Human Impact

I submit this portion respectfully and from the heart.

The pressure we are under is not the ordinary stress of litigation. It is the constant fear that we are one order away from losing the medical and housing stability that keeps my husband functioning day to day.

I am exhausted physically and emotionally.

I am doing everything I can — with one functioning hand — to care for my husband and navigate a complex legal process without counsel. We are not asking for special treatment. We are asking for a brief pause so that our appeals can be heard before irreversible harm occurs.

## 10. Conclusion

I respectfully ask this Court to preserve the status quo long enough for meaningful appellate review to occur.

Without that protection, the harm to my husband and me will be immediate, severe, and in many respects permanent.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Dated ___2-25-26___


**Respectfully submitted,**

**I declare under penalty of perjury that everything I have stated in this document is true and correct.**

PRINT FULL NAME: ___JACQUELINE E. ARD___

SIGNATURE: _____

Sworn to and subscribed before me on (date) ___2/25/26___.

Notary Public: _____          Notary Seal

[Notary's Printed Name]___Curt Jorrey___

Commission Expires: ___10/26/31___

STATE OF ___Mich___          )

COUNTY OF ___Oakland___          ) SS
                                 )

CURT JORREY
Notary Public - State of Michigan
County of Oakland
My Commission Expires Oct 26, 2031
Acting in the County of _____

5

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| **JACQUELINE ELIZABETH ARD** and **TERRY FRANK NICOLA**, Appellants, <br><br> v. <br><br> **KEVIN CAMPBELL, Chapter 7 Trustee**, et al., Appellees. | ADV PROC: 9:25-cv-04500-BHH-MHC <br> BK CASE NO.:25-01384-JD <br> CHAPTER 7 <br><br> **APPENDIX A** |

**APPENDIX A: CONSOLIDATED JURISDICTIONAL NARRATIVE**
*(Submitted in Support of Appellants' Emergency Motion for Stay Pending Appeal and Related Relief)*

## I. PURPOSE OF THIS APPENDIX

Appellants Jacqueline Elizabeth Ard and Terry Frank Nicola respectfully submit this Consolidated Jurisdictional Narrative to assist the Court in understanding the procedural posture of interrelated bankruptcy rulings now on appeal and the urgent need to preserve appellate jurisdiction.

This Appendix provides a clear, chronological framework—not to relitigate merits issues, but to demonstrate:

- existence of multiple live appellate issues;
- accelerating § 363 liquidation below; and
- imminent risk that appellate review will become ineffective absent interim relief.

Fourth Circuit authority confirms district courts' power under 28 U.S.C. § 158(a), Fed. R. Bankr. P. 8007, and 28 U.S.C. § 1651 (All Writs Act) to preserve jurisdiction where lower court actions threaten mootness. *See In re Rare Earth Minerals, LLC*, 445 F.3d 359, 363 (4th Cir. 2006) (§ 363(m) creates powerful mootness risk requiring timely stays); *In re Litton*, 330 F.3d 636, 641-42 (4th Cir. 2003) (All Writs Act authorizes mandamus to protect appellate review).

1

## II. STATUTORY AND APPELLATE FRAMEWORK

28 U.S.C. § 158(a) grants jurisdiction over final and certain interlocutory bankruptcy orders. Fed. R. Bankr. P. 8007(b) authorizes district courts to:

- issue stays pending appeal;
- suspend/modify bankruptcy orders; and
- grant "any other appropriate relief" to preserve status quo.

§ 363 sales heighten urgency: Statutory mootness under § 363(m) severely constrains appellate remedies post-closing to good-faith purchasers. *See In re Rare Earth Minerals*, 445 F.3d at 363 ("powerful mootness effect"); *Nken v. Holder*, 556 U.S. 418, 427 (2009) (stay preserves "meaningful appellate review"). Courts thus scrutinize stay requests carefully in sale contexts. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

## III. CONSOLIDATED PROCEDURAL HISTORY

A. Chapter 13 Filing and Reorganization Efforts

Debtors filed Chapter 13 to reorganize rental-property business funded by Mr. Nicola's disability retirement, aiming to pay legitimate creditors in full. Record shows:

- timely schedules/plan documents;
- confirmable plan proposal; and
- 100% timely plan payments pre-conversion.

*Good faith evidenced by compliance*: *In re Kestell*, 99 F.3d 146, 149 (4th Cir. 1996) (plan payments/court compliance show good faith).

B. Motion to Impose Automatic Stay and May 22 Hearing

Under § 362(c)(4)(B), Debtors filed Motion to Impose Stay. Despite 843-mile trip amid disabilities/weather:

- 9:03 a.m.: Notified deputy of 11:37 ETA; deputy confirmed hearing would proceed.
- 11:15 a.m.: Deputy reconfirmed; Debtors affirmed imminent arrival.
- 11:37 a.m.: Arrived ready; all parties present.

Court called case ~11:30, denied motion with prejudice for "failure to appear" without merits hearing. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (due process requires opportunity to be heard).

C. Conversion and Liquidation Escalation

Post-conversion to Chapter 7, Trustee pursued accelerated liquidation of real properties. Debtors timely:

- objected to sale procedures;
- amended exemptions under § 522; and
- prosecuted appeals.

D. Sale Order and Overruled Objections

Bankruptcy Court approved § 363 sales/turnover despite objections raising:

- absent property-specific § 363 findings;
- ignored § 522 exemptions;
- premature § 363(m) protections; and
- overbroad turnover authority.

Sale process now accelerates toward closing.

## IV. CURRENT APPELLATE POSTURE

Live appeals challenge: stay denials, exemption rulings, conversion order, sale approval. Debtors satisfied all obligations:

- timely notices/elections;
- filing fees paid;
- record designations/statements of issues;
- transcript requests; and
- emergency stay motions.

Stagnation stems from record delays, not Debtors' inaction. *See In re Otero*, 832 F.2d 1418, 1421 (4th Cir. 1987) (appellant diligence preserves jurisdiction despite clerical delays).

**3**

## V. IMMINENT JURISDICTIONAL RISK

Trustee's trajectory risks:

- § 363 sales to good-faith purchasers;
- executed turnover/disposal; and
- § 363(m) mootness foreclosing review.

*Fourth Circuit: Mootness threatens jurisdiction*: *Rare Earth Minerals*, 445 F.3d at 363 (stay essential to prevent § 363(m) from destroying appellate remedies).

## VI. EQUITABLE CONTEXT

- Both Appellants permanently disabled (Parkinson's, hand paralysis);
- Perfect Chapter 13 payment history;
- 843-mile court appearances despite crises;
- Prior dismissals = medical/procedural, not abuse;
- Relief sought = temporary preservation only.

*Equity favors protection*: *Nken*, 556 U.S. at 434-35 (disability/diligence weigh heavily).

## VII. CONCLUSION

Without stay, § 363 sales will trigger mootness, stripping this Court's ability to grant effective relief. Preservation authority under § 158(a), Rule 8007(b), and § 1651 is squarely applicable. *See Litton*, 330 F.3d at 642 (extraordinary relief warranted to protect jurisdiction).

Immediate administrative stay, expedited hearing, and status quo preservation respectfully requested.

**4**