Filed By The Court
8/21/2026 4:29 PM
U.S. BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| **IN RE:**<br><br>**Jacqueline Ard and**<br>**Terry F. Nicola,**<br>**Debtor(s)** | BK CASE NO.:25-01384-JD<br>CHAPTER 7<br><br>**DEBTORS' OBJECTION TO APPLICATION FOR APPROVAL OF SETTLEMENT AND COMPROMISE;** |

# DEBTORS' OBJECTION TO APPLICATION FOR APPROVAL OF SETTLEMENT AND COMPROMISE; REQUEST FOR EVIDENTIARY HEARING; AND MOTION FOR ENLARGEMENT OF TIME AND LEAVE TO FILE OBJECTION OUT OF TIME DUE TO EXCUSABLE NEGLECT AND DOCUMENTED DISABILITY-RELATED COMPLICATIONS

Debtors Jacqueline Elizabeth Ard and Terry Frank Nicola ("Debtors"), appearing pro se, respectfully object to the **Notice of Motion/Application and Opportunity for Hearing** filed by Chapter 7 Trustee Kevin Campbell on July 30, 2026, ECF No. 328, seeking approval of a proposed compromise with Stuart A. Gold, Chapter 7 Trustee for Patricia Perry, concerning the real property located at **15826 Appoline Street, Detroit, Michigan 48227** ("Appoline" or the "Property").

Debtors simultaneously move under Federal Rule of Bankruptcy Procedure 9006(b)(1) for enlargement of time and leave to file this Objection out of time because documented disability-related complications materially interfered with their ability to meet the response deadline.

Debtors respectfully request that the Court grant leave to file this Objection out of time, consider the Objection on its merits, and **deny the Application without prejudice or defer approval pending development of an evidentiary record sufficient to determine whether the compromise falls within the range of reasonableness and serves the best interests of the Ard bankruptcy estate and its creditors.**

Debtors further request an evidentiary hearing if the Trustees rely upon disputed factual assertions concerning title, value, expenditures, possession, expected sale proceeds, competing estate interests, or the proposed settlement allocation.

# I. PRELIMINARY STATEMENT

1. On July 30, 2026, Trustee Campbell filed ECF No. 328, a Notice of Motion/Application and Opportunity for Hearing concerning a proposed settlement between Trustee Campbell and Trustee Gold.
2. The Notice expressly advises parties in interest that any written response or objection must be filed within twenty-one (21) days of service and schedules a hearing for **September 2, 2026 at 10:00 a.m.** if an objection is timely filed. **ECF No. 328 at 1.**
3. The proposed compromise materially affects interests asserted by the Ard estate relating to Appoline.
4. Among other things, the proposed compromise provides that:

   a. Trustee Campbell will waive any claims by the Ard estate to possession of Appoline;

   b. Trustee Gold may immediately pursue possession of the Property from any person or entity in possession without further notice to Trustee Campbell;

   c. Trustee Gold may secure, market, and sell the Property;

   d. the Perry estate will receive **75% of the net sale proceeds**;

   e. the Ard estate will receive only **25% of the net sale proceeds**; and

   f. Trustee Campbell may thereafter file a claim in the Perry estate for **$97,143.94, less the amount received from the 25% distribution**, which claim will be treated as a **tardily filed general unsecured claim under 11 U.S.C. § 726(a)(3)**. **ECF No. 328 at 2; Proposed Settlement Order at 1–2.**

5. At the same time, the Application identifies the Appoline-related asset disclosed in Debtors' schedules as having an **"unknown value." ECF No. 328 at 2; amended Schedule A/B, Question 30.**
6. Debtors respectfully submit that the existing record does not establish how the Trustees determined that surrendering 75% of the net sale proceeds, waiving possession, and converting the balance of an asserted $97,143.94 property-based interest into a subordinated unsecured claim constitutes a fair and equitable compromise.
7. Debtors further submit that the record does not demonstrate that the compromise serves the **paramount interests of creditors**.
8. Debtors do not seek through this Objection to exercise the Trustee's causes of action or displace the Trustee's statutory authority. They seek a meaningful opportunity to be heard regarding whether the proposed compromise should be approved where it affects their present residence, asserted estate interests, and potentially any surplus ultimately distributable after full administration of the Ard estate.

## II. DEBTORS' DIRECT PECUNIARY INTEREST

9. Debtors respectfully submit that they possess a direct pecuniary interest in the proposed compromise.
10. Based upon the administration of the estate to date, Debtors understand that substantial estate assets have been liquidated and that the estate appears to have realized or may realize sufficient proceeds to satisfy allowed creditor claims and administrative expenses.
11. To the extent the Ard estate ultimately becomes solvent after payment of all allowed claims and administrative expenses, any remaining surplus is potentially returnable to Debtors.
12. The proposed compromise may directly affect the amount of any such surplus by transferring substantial Appoline-related value to the Perry estate.
13. The compromise also directly affects Jacqueline Ard's present possession and occupancy of Appoline as her current residence.
14. Debtors therefore submit that their potential surplus interest, combined with the direct effect of the proposed compromise upon their present residence and possession, provides a concrete and direct pecuniary interest in the Court's consideration of the settlement.

## III. MOTION FOR ENLARGEMENT OF TIME AND LEAVE TO FILE OBJECTION OUT OF TIME

15. Federal Rule of Bankruptcy Procedure 9006(b)(1) permits the Court, after expiration of a prescribed period, to permit a late act where the failure to act resulted from excusable neglect.
16. The Supreme Court has held that excusable neglect is an equitable determination requiring consideration of all relevant circumstances, including:

    a. danger of prejudice to the nonmoving party;

    b. length of the delay and its potential effect on judicial proceedings;

    c. the reason for the delay, including whether it was within the reasonable control of the movant; and

    d. whether the movant acted in good faith.

    *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

17. Those considerations favor acceptance of this Objection.

### A. Documented Disability-Related Circumstances

18. Debtor Terry Frank Nicola suffers from advanced and progressive Parkinson's disease and associated neurological and functional limitations.
19. On August 17, 2026, Mr. Nicola's treating medical provider issued an updated medical statement documenting substantial mobility impairment, freezing of gait, frequent falls,

impaired fine-motor function, speech limitations, medication requirements, and significant barriers affecting participation in judicial proceedings.

20. The medical provider expressly recommends flexibility during acute medical episodes and **extended or reasonably modified filing deadlines when medically necessary**, explaining that Mr. Nicola's neurological limitations substantially affect his ability to write, type, organize documents, and prepare materials within rigid time periods.
21. The provider further recommends caregiver or support-person assistance from Jacqueline Ard when medically and procedurally appropriate because Mr. Nicola's mobility, speech, document-handling, and other functional limitations interfere with his ability to participate independently.
22. Jacqueline Ard serves as Mr. Nicola's primary caregiver while simultaneously attempting to protect the Debtors' interests in this Chapter 7 proceeding without counsel.
23. These disability-related complications materially interfered with Debtors' ability to complete and file a response within the prescribed period.
24. The delay was not deliberate, tactical, or intended to impede administration of the estate.
25. Debtors acted promptly once they were reasonably able to address the Application.
26. Debtors will submit the August 17, 2026 medical statement as **Exhibit A**, subject to any redaction or protective treatment the Court determines appropriate because it contains sensitive medical information.

### B. The Pioneer Factors Favor Relief

27. **Length of Delay.** The delay is minimal.
28. **Prejudice.** Permitting the Objection will not materially prejudice the Trustees because the proposed order has not been finally adjudicated and the Notice itself contemplated a September 2, 2026 hearing upon objection.
29. **Impact on Proceedings.** Allowing the Objection should cause little disruption and will permit the Court to evaluate the settlement on a materially more complete record.
30. **Reason for Delay.** The delay arose from documented disability-related complications and substantial caregiving obligations.
31. **Good Faith.** Debtors are not attempting to obstruct estate administration. They seek an opportunity to be heard before substantial estate-related interests and their present residence are compromised.
32. Debtors therefore respectfully request that the Court find excusable neglect and deem this Objection timely filed.

## IV. RELEVANT BACKGROUND AND OVERLAPPING BANKRUPTCY ESTATE INTERESTS

33. Debtors commenced this bankruptcy case on **April 10, 2025**. The case was later converted to Chapter 7, and Kevin Campbell was appointed Chapter 7 Trustee. **ECF No. 328 at 2**.
34. Patricia Perry later commenced a Chapter 7 case in the United States Bankruptcy Court for the Eastern District of Michigan on **February 9, 2026**, Case No. 26-41320-MAR.
35. The record reflects that a deed recorded November 9, 2017 placed legal title to Appoline in Patricia Perry's name.

36. On or about May 31, 2019, Perry executed a quitclaim deed conveying her interest in the Property to Jacqueline Ard. The quitclaim deed was not recorded. **ECF No. 328 at 2.**
37. Ard contends that she funded the acquisition, paid consideration for the transfer, assumed responsibility for the Property, paid taxes and utilities, completed substantial repairs and improvements, maintained possession, and satisfied Detroit Land Bank requirements.
38. Prior to Perry's February 2026 bankruptcy filing, Ard had already commenced this South Carolina bankruptcy case and disclosed Appoline-related interests.
39. Trustee Gold later commenced **Gold v. Ard, Adv. Proc. No. 26-04106-MAR**, seeking avoidance of the unrecorded transfer under 11 U.S.C. § 544(a)(3).
40. The Application acknowledges that Trustee Gold was unaware of the Ard bankruptcy when the adversary proceeding was filed.
41. After learning that the Ard case remained pending, Trustee Gold notified the Michigan Bankruptcy Court and sought an administrative stay. **ECF No. 328 at 2.**
42. On May 22, 2026, the Michigan Bankruptcy Court entered **ECF No. 14** in Adv. Proc. No. 26-04106-MAR, ordering that the adversary proceeding be administratively stayed and cancelling the June 1, 2026 initial scheduling conference.
43. Because the Ard case was pending when the Michigan adversary began and because the Trustees acknowledge competing Appoline-related interests, the Court should require a record sufficient to assess the **value, validity, priority, and settlement value of the Ard estate's asserted interests before approving their compromise**.

## V. DEBTORS' DISCHARGE DID NOT CLOSE THE CASE OR TERMINATE ESTATE ADMINISTRATION

44. On June 24, 2026, this Court entered an Order granting Debtors a discharge under 11 U.S.C. § 727. **ECF No. 323.**
45. The discharge order expressly states that the discharge **does not close or dismiss the case and does not determine how much money, if any, the Trustee will pay creditors.**
46. Thus, although Debtors have received their discharge, this Chapter 7 estate remains in administration.
47. The proposed Appoline compromise therefore concerns an asset or disputed interest being addressed during the continuing administration of the Ard estate.

## VI. STANDARD FOR APPROVAL OF A RULE 9019 COMPROMISE

48. Federal Rule of Bankruptcy Procedure 9019(a) authorizes the Court, after notice and hearing, to approve a compromise or settlement proposed by a trustee.
49. Approval is not automatic. The Court must exercise an informed and independent judgment concerning whether the proposed compromise is fair and equitable.
50. The Court should consider the probability of success in litigation, likely collection difficulties, the complexity, expense, inconvenience, and delay of litigation, and the paramount interests of creditors.
51. Debtors respectfully submit that the present Application does not provide a record sufficient for that determination.

## VII. THE APPLICATION DOES NOT DEMONSTRATE THAT THE COMPROMISE SERVES THE PARAMOUNT INTERESTS OF CREDITORS

52. The Application states that Trustee Campbell believes, in the exercise of his business judgment, that the settlement benefits the estate because continued litigation would require retention of Michigan counsel, create additional expense, and offer no guarantee of a more favorable result. **ECF No. 328 at 3.**
53. Debtors acknowledge that litigation expense, delay, and uncertainty are proper considerations.
54. However, those considerations cannot be evaluated meaningfully without comparison to the value being surrendered.
55. The Application does not identify:

    a. the fair market value of Appoline;

    b. any appraisal or broker analysis;

    c. the anticipated sale price;

    d. projected closing costs;

    e. projected trustee commissions or administrative expenses;

    f. the expected net proceeds;

    g. the estimated value of the Ard estate's asserted interests;

    h. the probability of success or failure on those interests;

    i. the projected cost of Michigan litigation;

    j. the projected recovery on the proposed § 726(a)(3) unsecured claim; or

    k. the mathematical or legal basis for allocating 75% to the Perry estate and only 25% to the Ard estate.

56. Without this information, the Court cannot meaningfully compare the value surrendered against the benefit received.
57. Debtors therefore submit that the record does not presently demonstrate that the proposed compromise serves the paramount interests of creditors.

## VIII. THE 75/25 ALLOCATION IS NOT SUPPORTED BY AN IDENTIFIED VALUATION OR ECONOMIC ANALYSIS

58. Under the settlement, Trustee Gold will determine the net proceeds after sale.
59. The Perry estate will retain **75%** of those proceeds, while the Ard estate will receive **25%**. **ECF No. 328 at 2.**
60. Yet the Application simultaneously identifies the Appoline-related scheduled interest as having an **unknown value**.
61. No appraisal, comparative market analysis, broker price opinion, or other valuation evidence is attached.
62. No expected sale price is identified.
63. No projected net recovery to either estate is identified.
64. No calculation explaining why a 75/25 split appropriately values the competing interests is provided.
65. Debtors respectfully submit that the proposed allocation cannot be meaningfully evaluated without this information.

## IX. THE PROPOSED TREATMENT OF THE $97,143.94 INTEREST REQUIRES FURTHER EXPLANATION

66. The Application expressly identifies **$97,143.94** as the amount disputed based upon Ard's Answer in the Michigan adversary proceeding.
67. Ard contends that the amount reflects documented acquisition, preservation, rehabilitation, tax, utility, maintenance, and improvement expenditures relating to Appoline.
68. The proposed settlement does not provide payment of $97,143.94 to the Ard estate.
69. Instead, after receiving 25% of the net proceeds, Trustee Campbell may file a proof of claim in the Perry estate for the unpaid balance.
70. The proposed compromise expressly provides that the remaining claim will be treated as a **tardily filed general unsecured claim under § 726(a)(3)**.
71. The Application does not explain why asserted property-based, equitable, contractual, reimbursement, lien, or improvement interests should be compromised into a tardily filed general unsecured claim.
72. Nor does it identify the expected percentage distribution that such a claim would actually receive in the Perry estate.
73. Before approving that treatment, Debtors respectfully request that the Court require evidence showing the legal basis, expected recovery, priority consequences, and economic reasonableness of that treatment.

## X. THE PROPOSED COMPROMISE MAY TRANSFER VALUE FROM THE EARLIER-FILED ARD ESTATE TO THE LATER-FILED PERRY ESTATE

74. The Ard bankruptcy commenced on April 10, 2025.
75. The Perry bankruptcy commenced approximately ten months later, on February 9, 2026.

76. Under 11 U.S.C. § 541(a)(1), commencement of a bankruptcy case generally creates an estate comprising the debtor's legal and equitable interests existing as of commencement.
77. Debtors contend that whatever Appoline-related contractual, equitable, reimbursement, lien, beneficial, possessory, or other property interests Ard held as of April 10, 2025 potentially entered the Ard estate at that time.
78. Debtors are **not asking through this Objection for a final adjudication of title or ownership**.
79. Rather, Debtors submit that the existence, validity, priority, value, and settlement value of those interests should be sufficiently investigated before Trustee Campbell relinquishes them for 25% of unidentified net proceeds plus a subordinated unsecured claim.
80. Absent that analysis, there exists a material risk that value attributable to the earlier-filed Ard estate could be transferred to the later-filed Perry estate without adequate compensation to the Ard estate or its creditors.

## XI. THE POSSIBILITY OF A SURPLUS MAKES THE ECONOMIC EFFECT OF THE COMPROMISE DIRECTLY RELEVANT TO DEBTORS

81. Debtors submit that the estate appears to have realized substantial proceeds from liquidation of estate property and may ultimately possess sufficient funds to pay allowed creditor claims and administrative expenses.
82. If administration produces a surplus, the remaining value may ultimately be distributable to Debtors after satisfaction of all allowed claims and administrative expenses.
83. The proposed compromise therefore may reduce not only the value available to creditors but also any residual estate value potentially returnable to Debtors.
84. Debtors respectfully request that, before approval, the Trustee provide a current estimate of:

    a. cash presently held by the estate;

    b. anticipated remaining liquidation proceeds;

    c. allowed and unresolved claims;

    d. projected administrative expenses;

    e. whether a surplus is reasonably possible; and

    f. how the Appoline settlement would affect that projected outcome.

## XII. THE WAIVER OF POSSESSION IS A SEPARATE AND SUBSTANTIAL CONCESSION

85. Trustee Campbell proposes to waive any claims by the Ard estate to possession of Appoline and permit Trustee Gold to immediately pursue possession from any person or entity in possession so that Trustee Gold may secure, market, and sell the Property.

86. Jacqueline Ard and Terry Nicola presently reside at 15826 Appoline.
87. Consequently, this concession directly affects her present residence and occupancy independent of the ultimate allocation of sale proceeds.
88. To the extent the settlement relinquishes any possessory or occupancy-related interest asserted by the Ard estate, the Application should identify:

    a. the nature of the interest being relinquished;

    b. the estimated value of that interest;

    c. the consideration received by the Ard estate for surrendering it; and

    d. the procedure by which possession will be sought.

89. Debtors separately request that any order concerning possession preserve:

    a. constitutional and procedural due process;

    b. applicable lawful possession procedures under Michigan local and state laws;

    c. reasonable notice;

    d. reasonable access to remove personal property;

    e. protection against unauthorized disposal or destruction of personal property; and

    f. a reasonable transition period before displacement.

## XIII. INCOMPLETE CERTIFICATE OF SERVICE AND REQUEST FOR CONFIRMATION OR RENOTICE

90. Debtors further note that the **Certificate of Mailing attached to <u>ECF No. 328</u> does not identify Stuart A. Gold, Chapter 7 Trustee for the Patricia Perry estate, or Sandra L. O'Connor, counsel for Trustee Gold, among the persons shown as receiving either mailed or electronic service.**
91. <u>ECF No. 328</u> nevertheless concerns a settlement jointly negotiated by Trustee Campbell and Trustee Gold and specifically identifies counsel for both Trustees as moving parties. **<u>ECF No. 328 at 3</u>.**
92. The Certificate of Mailing states that copies of the Notice and Proposed Order were mailed to the listed parties and that "[o]ther parties were served electronically with this document."
93. However, the attached electronic-service list does not identify Trustee Gold or Sandra L. O'Connor as recipients.
94. Debtors recognize that Trustee Gold and his counsel were parties to the negotiated settlement and therefore may have had actual knowledge of the Application.

95. Nevertheless, because the Certificate purports to document formal service of a Rule 9019 compromise affecting two separate bankruptcy estates, Debtors respectfully request that the Court require the proponents to **confirm the completeness and sufficiency of service**.
96. Federal Rule of Bankruptcy Procedure 9019(a) requires notice and a hearing before approval of a compromise.
97. Federal Rule of Bankruptcy Procedure 2002(a)(3) generally requires **at least twenty-one (21) days' notice by mail of the hearing on approval of a compromise or settlement unless the Court for cause shown directs otherwise.**
98. Debtors therefore respectfully request that, if the Court determines that service did not comply with Fed. R. Bankr. P. 9019, Rule 2002, or applicable Local Rules, the Court require **corrected notice and service before approving the proposed compromise.**
99. To the extent the Court determines that renotice is required, Debtors specifically request **a new full objection period running from the date of proper service of the corrected notice**, consistent with Rule 2002(a)(3), and that no proposed settlement order be entered until:

    a. corrected service has been completed;

    b. the full response period has expired; and

    c. all timely objections have been considered.

100. Debtors further request that any renotice clearly identify all affected parties, the proposed 75/25 allocation, the proposed waiver of possession, the treatment of the asserted $97,143.94 interest, and the date and time of any rescheduled hearing.

## XIV. THE PROPERTY'S ACTUAL CONDITION IS MATERIAL TO THE SETTLEMENT ANALYSIS

101. Appoline is not a completed, stabilized, fully rehabilitated multi-unit residential property.
102. Ard contends that substantial portions remain materially incomplete and require additional rehabilitation, permit work, and municipal compliance.
103. Any valuation relied upon in support of the compromise should account for the Property's actual present condition, including unfinished units, repair obligations, permit requirements, municipal compliance issues, and anticipated completion costs.
104. Without a valuation based upon actual present condition, the Court cannot determine the expected net value being divided between the estates.

## XV. DEBTORS REQUEST TARGETED DISCLOSURES BEFORE DISCOVERY

105. Before authorizing formal discovery, Debtors respectfully request that the Trustees produce or supplement the record with the materials they relied upon in negotiating and recommending the compromise, including:

a. all appraisal or valuation materials concerning Appoline;

b. broker price opinions or comparative market analyses;

c. projected sale-price estimates;

d. projected closing-cost estimates;

e. projected trustee commissions and administrative expenses relating to the sale;

f. the written settlement agreement, if any separate agreement exists beyond the terms disclosed in ECF No. 328;

g. the calculation or analysis supporting the 75/25 allocation;

h. the projected value of the Ard estate's 25% recovery;

i. the projected value of the remaining $97,143.94 unsecured claim;

j. any analysis supporting treatment of that claim under § 726(a)(3);

k. projected Michigan litigation costs;

l. any analysis of the Ard estate's probability of success on its asserted interests; and

m. any analysis of the economic consideration attributable specifically to the waiver of possession.

106. If those disclosures resolve the material issues, further discovery may be unnecessary.

107. If material factual disputes remain, Debtors request limited discovery by further order of the Court.

## XVI. REQUEST FOR EVIDENTIARY HEARING

108. The Notice presently identifies a September 2, 2026 hearing if an objection is filed. **ECF No. 328 at 1.**

109. Debtors respectfully request that the hearing proceed if the Court accepts this Objection.

110. Debtors further request an evidentiary hearing if the Trustees rely upon disputed factual assertions concerning:

a. fair market value;

b. title or ownership interests;

c. acquisition funding;

d. expenditures and improvements;

e. possession or occupancy;

f. expected sale proceeds;

g. expected net proceeds;

h. the value or priority of the Ard estate's asserted interests;

i. projected litigation expenses;

j. expected recovery under § 726(a)(3); or

k. the basis for the 75/25 allocation.

111. Alternatively, if the Court determines that live testimony is unnecessary at this stage, Debtors request that approval be deferred until the Trustees provide sworn declarations and documentary support sufficient for the Court to evaluate those matters.

## XVII. THE COURT SHOULD NOT APPROVE THE COMPROMISE ON THE PRESENT RECORD

112. Trustee Campbell's business judgment is entitled to appropriate consideration, but Rule 9019 requires judicial approval after notice and hearing.

113. The Court must therefore possess sufficient information to make an informed and independent determination concerning the settlement.

114. Here, the present record identifies:

a. an asset of unknown scheduled value;

b. competing estate interests;

c. an earlier-filed bankruptcy estate;

d. an administratively stayed Michigan adversary;

e. asserted expenditures of $97,143.94;

f. a 75/25 division of unidentified net proceeds;

g. a waiver of possession;

h. conversion of the remaining asserted claim into a § 726(a)(3) tardily filed unsecured claim;

i. potential effects upon creditors and possibly a surplus distributable to Debtors; and

j. a Certificate of Mailing whose completeness should be confirmed before approval.

115. Yet the Application does not provide the valuation and economic analysis necessary to assess the fairness of those concessions.

116. Debtors therefore respectfully submit that approval should be denied without prejudice or deferred until an adequate evidentiary record has been developed and any service issue has been resolved.

## XVIII. RESERVATION OF RIGHTS

117. Nothing in this Objection should be construed as a concession concerning the ultimate ownership, validity, priority, extent, or enforceability of any interest in Appoline.

118. Debtors expressly preserve all rights concerning:

a. the 2019 quitclaim deed;

b. acquisition funding;

c. contractual rights;

d. equitable or beneficial interests;

e. reimbursement and restitution rights;

f. equitable or statutory lien theories;

g. improvements and preservation expenditures;

h. possession and occupancy;

i. personal property;

j. rights under 11 U.S.C. §§ 541, 544, 550, and 551;

k. rights relating to administration of the Ard estate; and

l. all applicable federal and Michigan law.

119. Debtors further emphasize that they do not seek through this Objection to exercise causes of action belonging exclusively to the Chapter 7 Trustee.

120. This Objection concerns whether the **proposed compromise itself** has been sufficiently supported and shown to be fair, equitable, within the range of reasonableness, and in the best interests of the Ard estate and its creditors.

## PRAYER FOR RELIEF

**WHEREFORE**, Debtors Jacqueline Elizabeth Ard and Terry Frank Nicola respectfully request that this Court:

**A.** Grant Debtors' Motion under Fed. R. Bankr. P. 9006(b)(1) and find that the brief delay resulted from excusable neglect arising from documented disability-related circumstances;

**B.** Deem this Objection timely filed;

**C.** Consider the Objection on its merits;

**D.** Decline to enter the proposed Settlement Order on the present record;

**E.** Deny the Application without prejudice or defer approval pending an evidentiary record sufficient to determine whether the compromise falls within the range of reasonableness and serves the best interests of the Ard estate and its creditors;

**F.** Conduct the hearing presently identified for September 2, 2026, or set another hearing at the Court's earliest convenience;

**G.** Require the proponents of the settlement to demonstrate that the compromise is fair and equitable and serves the paramount interests of creditors;

**H.** Require production or supplementation of the record with valuation materials, broker analyses, projected closing costs, settlement calculations, projected litigation costs, expected recoveries, and documentation supporting the proposed 75/25 allocation;

**I.** Require evidence concerning the legal and economic basis for treating the balance of the asserted $97,143.94 interest as a tardily filed general unsecured claim under 11 U.S.C. § 726(a)(3);

**J.** Require identification and valuation of any possessory or occupancy-related interest being relinquished by the Ard estate and the consideration received in exchange;

**K.** Preserve applicable due-process and lawful-process protections concerning possession and occupancy;

**L.** Preserve reasonable access and sufficient transition time for removal of personal property before any transfer of possession;

**M.** Require information sufficient to determine whether the Ard estate may generate a surplus after payment of allowed claims and administrative expenses and how the proposed compromise affects any such surplus;

**N.** Require the proponents to confirm the completeness and sufficiency of service of ECF No. 328;

**O.** If the Court determines that service was incomplete or defective, require corrected notice and service and provide **a new full objection period running from proper service**, consistent with Fed. R. Bankr. P. 2002(a)(3), before entry of any settlement order;

**P.** Permit limited discovery by further order only if the requested disclosures and evidentiary supplementation leave material factual disputes unresolved;

**Q.** Preserve all substantive rights and defenses concerning Appoline pending final adjudication or an adequately supported compromise; and

**R.** Grant such other and further relief as the Court deems just and proper.

**Dated** August 20, 2026

**Respectfully submitted,**

**Jacqueline E. Ard, Debtor *Pro Se***
21215 Dartmouth Dr
Southfield, MI 48076
(313) 770-7051
email: jacquelineard72@gmail.com

**Terry F. Nicola, Co-Debtor *Pro Se***
21215 Dartmouth Dr
Southfield, MI 48076